In re **SHOP TELEVISION NETWORK, INC.,** Debtor.

**SHOP TELEVISION NETWORK, INC.,** Plaintiff,

v.

Hillel **CHODOS** and Fierstein & Sturman Law Corporation, Defendants.

No. CV 93–4384–RJK.
Bankruptcy No. LA 92–15618–SB.
Adv. No. LA 92–03989–SB.

United States District Court,
C.D. California.

July 25, 1994.

Sharon Green, Las Vegas, NV, Michael Lubic, Debra L. Fischer, McCutchen, Doyle, Brown & Enersen, Los Angeles, CA, for plaintiff.

Hillel Chodos, pro se.

## MEMORANDUM OF DECISION AND ORDER AFFIRMING BANKRUPTCY COURT TURNOVER ORDER

KELLEHER, District Judge.

This is an appeal from a May 26, 1993, bankruptcy court order requiring Appellant Hillel Chodos ("Chodos") to return $283,-498.38 of excessive compensation (the "Turnover Order"). The Court, having read and considered all papers filed by the parties, and having heard oral argument thereon, finds as follows:

## I.

## BACKGROUND

Appellant Chodos is a California lawyer who represented Respondent Shop Television

Network, Inc. ("STN") in connection with STN's lawsuit against J.C. Penney Company, Inc. ("J.C. Penney") for breach of contract (the "J.C. Penney litigation"). On February 11, 1992, STN issued a check in the amount of $283,498.38 to Chodos. The next day, on February 12, 1992, STN filed a petition under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Central District of California.

Shortly after the bankruptcy petition was filed, STN filed an application before the bankruptcy court for an order approving the retention of Chodos as its special counsel to handle the litigation for STN (as debtor-in-possession) against J.C. Penney. After STN withdrew this application, it filed a renewed application which Judge Bufford, the presiding bankruptcy judge, denied on August 18, 1992. Judge Bufford was influenced by the fact that Chodos indicated that he would not keep time records and that he charged between $750 and $1000 per hour for his time.

On July 17, 1992, STN filed an adversary complaint in the bankruptcy case against Chodos and the law firm of Fierstein & Sturman, whom Chodos had associated to handle the J.C. Penney litigation, seeking recovery of the $283,498.38 paid to Chodos the day before STN filed for bankruptcy (the "adversary proceeding"). On November 4, 1992, Chodos filed an answer and counterclaim in the adversary proceeding.

On January 20, 1993, STN filed a motion in the bankruptcy court for leave to file a first amended complaint. The motion was scheduled for hearing on February 10, 1993, before Judge Bufford. The record reveals that Chodos was not served with a copy of this motion. The record further reveals that Chodos did not file an opposition to the motion, nor did he attend the hearing on the motion. On February 10, 1993, Judge Bufford granted STN's motion for leave to file a first amended complaint.

As soon as Chodos learned of this occurrence, he contacted counsel for STN. As a result, on April 7, 1993, STN re-filed its motion for leave to file a first amended complaint. This time, Chodos was served. On April 8, 1993, STN filed a motion for an order requiring the return of excessive compensation, to wit, the $283,498.38 paid to Chodos one day before STN filed for bankruptcy. Both these motions were set for hearing on May 4, 1993.

Also on April 8, 1993, Chodos filed a motion to disqualify Judge Bufford. This motion was set for hearing on May 25, 1993. On April 20, 1993, Chodos filed an affidavit under 28 U.S.C. § 144 alleging that Judge Bufford was biased and prejudiced against him. This affidavit was accompanied by the requisite certificate of good faith. Relying on his motion to disqualify Judge Bufford and his affidavit of prejudice, Chodos chose to forego filing any opposition on the merits to STN's motion for return of the $283,498.38 and motion for leave to file a first amended complaint. Instead, on April 27, 1993, Chodos filed a two-page opposition in which he stated that he had filed a motion to disqualify Judge Bufford, and that "the filing of Chodos' response on the merits will be deferred until a new judge has been assigned."

On May 4, 1993, at the hearing on STN's motions for turnover of excessive compensation and for leave to file a first amended complaint, Judge Bufford indicated that he thought that Chodos' affidavit of prejudice was both untimely and insufficient and orally granted STN's motion for turnover of excessive compensation and motion for leave to file a first amended complaint. Judge Bufford further ordered, *sua sponte*, that if Chodos did not comply with the Turnover Order within ten (10) days he would have to pay a penalty of $1,000.00 per day and if he did not comply with the Turnover Order within 30 days, he would have to pay $5,000.00 per day thereafter until the money was turned over (the "penalty provision").

These rulings were incorporated in formal orders which were entered on or about May 21, 1993. Chodos filed a timely notice of appeal on May 25, 1993.[1] On May 26, 1993, Chodos filed a motion for a stay of the Turnover Order pending appeal and fixing security pending the appeal. Chodos proposed to

---

1. The record does not reveal whether the hearing on Chodos' motion to disqualify Judge Bufford, which had been set for May 25, 1993, ever occurred.

place the $283,498.38 in a bank account jointly controlled with counsel for STN. A hearing was held on this motion the following day, May 27, 1993. At this hearing, pursuant to a request from counsel for STN, Judge Bufford deleted from the Turnover Order the penalty provisions referred to above. Upon the deposit of the $283,498.38 into a joint bank account, Judge Bufford granted Chodos' motion to stay.

On this appeal, the Court is asked to determine whether Judge Bufford acted properly in issuing the Turnover Order. Jurisdiction exists pursuant to 28 U.S.C. § 158.

## II.

## STANDARD OF REVIEW

■ This Court applies the same standard of review to the bankruptcy court findings as does the court of appeals: findings of fact are reviewed under the clearly erroneous standard; conclusions of law are reviewed *de novo*. *In re Tucson Estates, Inc.*, 912 F.2d 1162, 1166 (9th Cir.1990).

## III.

## DISCUSSION

■ The bankruptcy court entered the Turnover Order pursuant to the authority

2. 11 U.S.C. § 329 provides as follows:

"(a) Any attorney representing a debtor in a case under this title, or in connection with such a case, whether or not such attorney applies for compensation under this title, shall file with the court a statement of the compensation paid or agreed to be paid, if such payment or agreement was made after one year before the date of the filing of the petition, for services rendered or to be rendered in contemplation of or in connection with the case by such attorney, and the source of such compensation.

(b) If such compensation exceeds the reasonable value of any such services, the court may cancel any such agreement, or order the return of any such payment, to the extent excessive, to—
   (1) the estate, if the property transferred—
      (A) would have been property of the estate; or
      (B) was to be paid by or on behalf of the debtor under a plan under chapter 11, 12, or 13 of this title; or
   (2) the entity that made such payment."

3. Chodos has not argued that the mere filing of a motion for disqualification pursuant to 28 U.S.C. § 455 operates to prevent the judge against

vested in it by 11 U.S.C. § 329.[2] As an initial matter, the Court notes that Chodos cannot now challenge the applicability of 11 U.S.C. § 329 to the fees paid Chodos in connection with the J.C. Penney litigation, since Chodos did not include this issue in his designation of issues on appeal. Fed. R.Bankr.P. 8006; *In re Pine Mountain, Ltd.*, 80 B.R. 171, 172 (9th Cir. BAP 1987).

Analyzing the propriety of the Turnover Order therefore depends upon the resolution of the following two issues: (1) whether the mere filing of Chodos' affidavit of prejudice pursuant to 28 U.S.C. § 144 automatically divested Judge Bufford of authority to rule on STN's motion for turnover of excessive compensation; and (2) whether Judge Bufford properly determined that Chodos' affidavit of prejudice was untimely and insufficient.[3]

### A. The Filing of the Affidavit of Prejudice

■ Chodos argues that upon the timely filing of a proper affidavit of prejudice pursuant to 28 U.S.C. § 144, a judge is automatically divested of the authority to act any further on the case with respect to which the affidavit is filed.[4] However, it is well settled

whom the motion is directed from acting on the case prior to the hearing on the motion for disqualification. In this case, The Turnover Order was issued prior to the hearing on Chodos' motion for disqualification. Consequently, the Court need not address whether the motion for disqualification had any impact upon Judge Bufford's authority to enter the Turnover Order.

4. 28 U.S.C. § 144 provides that: "[w]henever a party to any proceeding in a district court makes and files a timely and sufficient affidavit that the judge before whom the matter is pending has a personal bias or prejudice either against him or in favor of any adverse party, such judge shall proceed no further therein, but another judge shall be assigned to hear such proceeding.

The affidavit shall state the facts and the reasons for the belief that bias or prejudice exists, and shall be filed not less than ten days before the beginning of the term at which the proceeding is to be heard, or good cause shall be shown for failure to file it within such time. A party may file only one such affidavit in any case. It shall be accompanied by a certificate of counsel of record stating that it is made in good faith."

law that the mere filing of an affidavit under 28 U.S.C. § 144 does not automatically disqualify a judge. *United States v. Bray,* 546 F.2d 851, 857 (10th Cir.1976) (citing *United States v. Townsend,* 478 F.2d 1072, 1073 (3d Cir.1973)); *Commonwealth of Pa. v. Local Union 542, Int'l Union of Operating Eng'rs,* 388 F.Supp. 155, 158 (E.D.Pa.1974). Before an affidavit filed under 28 U.S.C. § 144 will operate to disqualify a judge, the affidavit must be found to be both timely and sufficient. *Townsend,* 478 F.2d at 1073.

"A trial judge has as much obligation not to recuse himself when there is no reason to do so as he does to recuse himself when the converse is true." *Bray,* 546 F.2d at 857 (citations omitted). Thus, it is for the trial judge to determine whether the affidavit is timely and sufficient. Any other rule of law would provide attorneys with an almost unfettered means of delaying judicial proceedings. Were this not the rule, an attorney who was unable to obtain a continuance by resort to appropriate means could simply file an affidavit of prejudice and obtain the desired continuance.

■ Judge Bufford therefore properly determined that the mere filing of the affidavit of prejudice did not result in his disqualification. Indeed, Judge Bufford was under an obligation to determine whether the affidavit was both timely and sufficient before taking the drastic step of disqualifying himself. *See Bray,* 546 F.2d at 857. As such, Chodos' appeal turns upon whether Judge Bufford properly determined that Chodos' affidavit of prejudice was untimely and insufficient.

### B. Timeliness and Sufficiency of the Affidavit of Prejudice

At the hearing on May 4, 1993, Judge Bufford indicated that he thought that Chodos' affidavit of prejudice was untimely and insufficient and orally granted STN's motion

for turnover of excessive compensation and motion for leave to file a first amended complaint. Based upon a review of the record, the Court finds that Judge Bufford correctly determined that the affidavit was insufficient, but incorrectly determined that the affidavit was not timely.

### 1. Timeliness

■ Chodos filed his affidavit of prejudice on April 20, 1993. Assuming, *arguendo,* that the bases upon which Chodos relied in filing his affidavit of prejudice are sufficient, the Court cannot say that the affidavit was untimely.[5] Chodos filed the affidavit of prejudice approximately one week after obtaining the transcript to the April 6, 1993, hearing. The Court therefore finds that Chodos' affidavit of prejudice was timely filed, and that Judge Bufford erred when he found the opposite to be true. However, because the Court finds that the evidence of prejudice contained in the 28 U.S.C. § 144 affidavit is insufficient as a matter of law, Judge Bufford's error is harmless.

### 2. Sufficiency

It has long been the rule that, with respect to affidavits of prejudice filed pursuant to 28 U.S.C. § 144, "[t]he alleged bias and prejudice to be disqualifying must stem from an extrajudicial source and result in an opinion on the merits on some basis other than what the judge learned from his participation in the case." *United States v. Grinnell Corp.,* 384 U.S. 563, 583, 86 S.Ct. 1698, 1710, 16 L.Ed.2d 778 (1966) (citation omitted). This rule has come to be known as the "extrajudicial source" doctrine.

Recently, in connection with a motion for disqualification under 28 U.S.C. § 455(a), the Supreme Court had occasion to more carefully delineate the boundaries of the "extrajudicial source" doctrine. In *Liteky v. United*

---

5. The main ground upon which Chodos relies as evidence of Judge Bufford's prejudice against him is the fact that Judge Bufford initially granted STN's motion for leave to file a first amended complaint on February 10, 1993, without having received the benefit of an opposition from Chodos. Chodos also seems to place great significance upon the fact that he was not notified of a hearing, the purpose of which is unclear from

the record, which was held on April 6, 1993, before Judge Bufford at which the subject of the first amended complaint was discussed. Chodos argues that these *"ex parte"* communications, coupled with Judge Bufford's denial of STN's application to employ Chodos as special counsel, demonstrate Judge Bufford's "prejudice" against Chodos.

*States*, —— U.S. ——, 114 S.Ct. 1147, 127 L.Ed.2d 474 (1994), the Court stated:

> It is wrong in theory, though it may not be too far off the mark as a practical matter, to suggest, as many opinions have, that "extrajudicial source" is the only basis for establishing disqualifying bias or prejudice. It is the only common basis, but not the exclusive one, since it is not the exclusive reason a predisposition can be wrongful or inappropriate. A favorable or unfavorable predisposition can also deserve to be characterized as "bias" or "prejudice" because, even though it springs from the facts adduced or the events occurring at trial, it is so extreme as to display clear inability to render fair judgment.

*Liteky*, 114 S.Ct. at 1155. This limitation on the extrajudicial source doctrine applies both to motions brought pursuant to 28 U.S.C. § 455 and affidavits of prejudice filed pursuant to 28 U.S.C. § 144. *Id.,* 114 S.Ct. at 1155–57.

█ In the instant case, although no rule of law prevents Chodos from attempting to demonstrate prejudice by relying upon facts adduced or events occurring before the bankruptcy court, Chodos' attempt to do so here falls far short of the mark. Chodos has made no showing that any predisposition which Judge Bufford might possess against him because of his involvement with STN's bankruptcy "is so extreme as to display clear inability to render fair judgment." *Id.,* 114 S.Ct. at 1155. While Judge Bufford may have given vent to a slight degree of frustration that the "Chodos matter" had not yet been resolved, such frustration is not wholly unusual or indicative of an inability to maintain impartiality and judicial decorum.

█ Likewise, the mere fact that Chodos was not served with notice of the first hearing on STN's motion to file a first amended complaint does not demonstrate the degree of prejudice necessary to require disqualification. Even if the Court were to find, as Chodos argues, that the February 10, 1993, hearing amounted to an *ex parte* communication, this would not free Chodos of the requirement that he demonstrate that Judge Bufford was biased against him. *Willenbring v. United States*, 306 F.2d 944, 946 (9th Cir.1962). Accordingly, the Court finds that the allegations of bias contained in Chodos' affidavit of prejudice are insufficient as a matter of law to require disqualification of Judge Bufford. Judge Bufford was therefore not precluded from ruling on STN's pending motions at the hearing on May 4, 1993.

█ While it may appear a harsh result to uphold the Turnover Order even though Chodos did not file an opposition on the merits, it must be stressed that Chodos was served with timely notice of this motion and consciously decided to forego filing an opposition on the merits. Instead, Chodos gambled on his false assumption that the mere filing of the affidavit of prejudice automatically disqualified Judge Bufford. Had Chodos moved for a continuance of the motion for return of excessive compensation until after the hearing on his motion for disqualification, Chodos may have had an opportunity to file an opposition on the merits. Indeed, the more prudent course of action would have been to file an opposition on the merits just in case Chodos' understanding of the effect of the filing of an affidavit of prejudice was mistaken. Chodos' failure to take these rudimentary precautions is not a basis for relief.

## IV.

## ORDER

The Court finds that Judge Bufford did not commit reversible error in issuing the Turnover Order; hence, the order of the bankruptcy court is **AFFIRMED.**